**James DAHER, Appellant,**

v.

**Mark SEVIER, Appellee.**

**No. 52A04–1103–MI–150.**

Court of Appeals of Indiana.

Sept. 2, 2011.

James Daher, Bunker Hill, IN, Appellant Pro Se.

---

## OPINION

FRIEDLANDER, Judge.

James Daher is a prisoner incarcerated at the Miami Correctional Facility. He appeals the dismissal of his request for a temporary restraining order (TRO).

We affirm.

The facts are that at all times relevant to this appeal Daher was a resident at the Miami Correctional Facility (MCF). On January 28, 2011, he submitted a petition entitled, "Verified Emergency Petition for Issuance of Temporary Restraining Order (TRO) or Injunction." *Appellant's Appendix* at 25. He was notified by the trial court that there was a $156.00 filing fee for his motion and that the court could not determine whether he was eligible for a fee waiver unless he submitted a certified six-month accounting statement of his trust account at MCF, as well as an affidavit of indigency. The requested documentation was submitted on February 11. His verified petition was thereafter filed on February 24, 2011.

In his petition, Daher sought an order enjoining the Indiana Department of Correction (the DOC) from implementing a plan to issue jumpsuits to inmates rather than shirts and pants. Daher detailed the irreparable harm that he would suffer as follows:

> Plaintiff will directly and immediately suffer harm, as said jumpsuits are poorquality; substandard and subject to tearing; ill-fitting—not sized properly, thus causing needless discomfort; and made of very thin, "summer weight" material. Plaintiff will be made to wear one (at a time) thin, shirt-material jumpsuit, issued in January and February, the coldest months of the year. . . .
>
> Again, Plaintiff will suffer irreparable harm, if defendants are allowed to force plaintiff to wear what are essentially pajamas, summer-weight pajamas at that—in the dead of winter. There is *no* alternative to these pajama suits being issued by defendants. Plaintiff cannot purchase alternative, warmer or proper-fitting clothing. _
>
> Plaintiff is required by defendants to wear these substandard jumpsuits. No provision for cold-weather wear has been made. [The product manufacturer's] workers have told plaintiff that this thin material was not intended for the jumpsuits, but shirts, and a mistake in ordering left [the product manufacturer] with a surplus of the wrong (thin) material for jumpsuits. Manufacture of jumpsuits was instituted without the proper material. Quick-tearing quick-obsolescence jumpsuits, which are too thin for winter wear, are being forced on plaintiff.

*Appellant's Appendix* at 28–29 (parentheticals and emphasis in original). Daher further claimed that the activity he sought to enjoin violated the Eighth Amendment prohibition against cruel and unusual punishment, as well as (without specifically identifying it) the Indiana State Constitutional counterpart to the Eighth Amendment. In summary, Daher sought to enjoin the MCF from changing the prison uniform from pants and shirt to a jumpsuit.[1]

---

1. In his petition, Daher also complains of inadequate coats and blankets and of ill-fitting shoes "made primarily of cardboard."

The next day—February 25—the trial court dismissed Daher's petition after screening the petition pursuant to Ind. Code Ann. § 34–58–1–2 (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011).[2] Daher appeals that dismissal.

■ When reviewing the dismissal of an offender's claim pursuant to I.C. § 34–58–1–2, we employ a de novo standard of review. *Smith v. Donahue*, 907 N.E.2d 553 (Ind.Ct.App.2009), *trans. denied, cert. dismissed,* — U.S. —, 130 S.Ct. 800, 175 L.Ed.2d 556. We look only to the well-pleaded facts contained in the complaint or petition. *Id.* Moreover, we determine whether the complaint or petition contains allegations concerning all of the material elements necessary to prevail in the action under some viable legal theory. *Id.* We note also that Daher is proceeding pro se and lacks legal training. Such litigants are held to the same standard as trained counsel and are required to follow procedural rules. *Ross v. State*, 877 N.E.2d 829 (Ind.Ct.App.2007), *trans. denied.*[3]

■ I.C. § 34–58–1–2 provides, in relevant part,

(a) A court shall review a complaint or petition filed by an offender and shall determine if the claim may proceed.

A claim may not proceed if the court determines that the claim:

(1) is frivolous;

(2) is not a claim upon which relief may be granted; or

(3) seeks monetary relief from a defendant who is immune from liability for such relief.

(b) A claim is frivolous under subsection (a)(1) if the claim:

(1) is made primarily to harass a person; or

(2) lacks an arguable basis either in:

(A) law; or

(B) fact.

(c) A court shall dismiss a complaint or petition if:

(1) the offender who filed the complaint or petition received leave to prosecute the action as an indigent person; and

(2) the court determines that the offender misrepresented the offender's claim not to have sufficient funds to prosecute the action.

The order dismissing Daher's petition is ambiguously phrased, i.e., "[T]he Court **FINDS** that the Petitioner /Plaintiff, James Daher has failed to state sufficient basis for this Court to grant the emergency relief sought by the incarcerated prisoner at the Miami Correctional Facility. The

*Id.* at 28. His request for relief, however, addresses only the jumpsuits.

2. The court did not explicitly indicate that its dismissal was premised upon I.C. § 34–58–1–2, but there is no doubt that such was the basis for the court's action.

3. Customarily, we would also note at this point that the appellee did not file a brief, in which case we will typically apply a less stringent standard of review pursuant to which we will reverse if the appellant establishes prima facie error. *See Zoller v. Zoller*, 858 N.E.2d 124 (Ind.Ct.App.2006). In this case, however,

a copy of Daher's petition was never served upon any defendant, presumably because the petition was dismissed shortly after it was filed—before service of process was initiated. The State notified this court in a submission entitled "Notice of Non–Involvement of the State and the Indiana Attorney General" that, as a result of the lack of service, it had no involvement in the case and would not be filing a brief unless requested to do so by this court. We very much appreciate the notification of the State's intentions and the explanation of the supporting rationale, and hereby decline its offer to file a brief in support of the trial court's dismissal of Daher's petition.

Court therefore **DISMISSES** the Emergency Petition forthwith and without hearing." *Appellant's Brief* at 19 (emphasis in original). This may be interpreted as dismissing the petition either under subsection (a)(2) for failure to state a claim or as frivolous under subsection (b)(2). For our purposes, it does not matter which the court intended because the order is sustainable on either basis.

Ind.Code Ann. § 5–23–5 et seq. (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011) sets out the procedure to be followed by governmental entities that wish to enter into agreements with private parties in certain circumstances. It involves, among other things, a requirement that the governmental entity seek proposals, or bids, from which it will "negotiate the best and final offers of responsible offerors who submit proposals that are determined to be reasonably susceptible of being selected for a public-private agreement." I.C. § 5–23–5–7 (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011). Daher's first claim is that he was entitled to a TRO because the Department of Correction engaged in impropriety when it awarded the contract for making the jumpsuits to "P.E.N. Products" without engaging in a public bidding process under I.C. § 5–23–5 et seq. *Appellant's Brief at 9.* He explains, "Because Mark Sevier, Indiana Department of Correction and P.E.N. Industries violated *I.C. 5–23–5–1* et seq., appellant was irreparably harmed per se and thus did not need to establish actual harm." *Id.*

A brief review of the statutory provisions upon which Daher relies reveals that Article 23 of Title 5 establishes the procedures to be followed by governmental bodies when entering "into a public-private agreement with an operator." I.C. § 5–23–1–3 (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011). An "operator" in this context is defined as "a person who has entered into either an operating agreement or a BOT agreement with a governmental body to provide services to or on behalf of the governmental body." I.C. § 5–23–2–8 (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011). "Operating agreement" as used in I.C. § 5–23 et seq. means "an agreement between an operator and the governmental body for the operation, maintenance, repair, or management of a public facility." I.C. § 5–23–2–7 (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011). "BOT agreement" in the same context is defined as "any agreement between a governmental body and an operator to construct, operate, and maintain a public facility and to transfer the public facility back to the governmental body at an established future date." I.C. § 5–23–2–3 (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011). The contract of which Daher complains in this action concerns the provision of prison uniforms. This contract cannot fairly be characterized as either an operating agreement under I.C. § 5–23–2–7 or a BOT under 5–23–2–3. Therefore, this contract is not governed by I.C. § 5–23 et seq. and Daher's argument to that effect is without merit.

■ Daher's second argument in support of the viability of his petition, reduced to its essence, is that the jumpsuit uniform he will henceforth be required to wear is made of substandard material that is prone to tearing easily, too thin to keep him warm in the winter, and is not tailored to fit well and comfortably. As such, the argument goes, forcing him to wear the jumpsuit constitutes cruel and unusual punishment and is forbidden by the Eight Amendment.

 The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The authors of this provision "drafted a categorical prohibition against the infliction of cruel and unusual punishments, but they made no attempt to define the contours of that category." *Thompson v. Oklahoma,* 487 U.S. 815, 821, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). That task was delegated "to future generations of ·judges[.]'" *Id.* (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion) (Warren, C.J.)). In determining whether a particular punishment is "cruel and unusual" within the meaning of the Eighth Amendment, we must look beyond historical conceptions to " 'the evolving standards of decency that mark the progress of a maturing society.' " *Graham v. Florida,* —— U.S. ——, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010), *as modified* (July 6, 2010) (quoting *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Eighth Amendment prohibits the imposition of inherently barbaric punishments under all circumstances. *Graham v. Florida,* 130 S.Ct. 2011. But that is not the limit of its reach. The conditions of confinement may also give rise to a valid Eighth Amendment claim. *See, e.g., Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

 "[U]nder the Eighth Amendment, the State must respect the human attributes even of those who have committed serious crimes." *Graham v. Florida,* 130 S.Ct. at 2021, 130 S.Ct. 2011. Thus, " 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]' " *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). Although the Eighth Amendment does not permit inhumane conditions to exist in prisons, neither does it mandate that prisons be "comfortable[.]" *Farmer v. Brennan,* 511 U.S. at 832, 114 S.Ct. 1970.

In the instant case, Daher's petition for a TRO was based upon a claim concerning a condition of his incarceration that, even if true, cannot be characterized as barbaric, or anything approaching that level of cruelty or inhumane treatment or conditions. He claims that the jumpsuits he must wear might tear, will not fit properly, and are too thin to adequately protect him from the winter cold. Without meaning to be flip, we presume that the facility in which he is housed is heated in the winter and that he will be provided with appropriate outer wear in the event he must go outside into the cold. In short, his complaint addresses matters of comfort that do not rise to the level of wanton deprivation or undue suffering. In fact, the condition of which he complains falls so far below the Eighth Amendment threshold of cruel and unusual punishment that it can fairly be characterized as a trivial complaint in that context. As such, whether denominated as frivolous or so wide of the mark that it fails to state an Eighth Amendment claim upon which relief may be granted, the trial court did not err in dismissing Daher's petition, as permitted by I.C. § 34–58–1–2(a) and (b).

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.