**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 31 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ALISON E. CLAPP**
Bangor, Pennsylvania

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE GUARDIANSHIP OF THORA MOULTON: | ) |
| | ) |
| ALISON E. CLAPP (O'CALLAGHAN), | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | )     No. 64A04-1201-GU-13 |
| | ) |
| DONALD J. EVANS, | ) |
| | ) |
| Appellee. | ) |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
The Honorable Mary A. DeBoer, Magistrate
Cause No. 64D01-0802-GU-1651

**July 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Alison Clapp (O'Callaghan) (Clapp)[1] and the Guardianship of Thora Moulton, *pro se*, appeal an award of attorney fees and guardianship-related fees to Donald E. Evans. Clapp initially presents her claims as sixteen numbered issues, but has organized the "argument" section of her appellate brief into seven numbered "points." We have further winnowed the list to the following three:

1. Is Ind. Code Ann. § 29-3-3-4 (West, Westlaw through legislation effective May 31, 2012) unconstitutional?

2. Did the trial court err in failing to grant Clapp's motion for summary judgment?

3. Did the trial court err in awarding attorney fees to Evans?

We reverse.

The facts underlying this dispute were set out in this court's resolution of Clapp's direct appeal as follows:

On February 19, 2008, Attorney Donald J. Evans filed a verified petition for the appointment of a temporary guardian over the person and estate of Thora M. Moulton, alleging that Moulton was "unable to maintain and care for her person or financial affairs" and "require[d] twenty-four hour, seven day a week care." A statement from a physician attesting to the latter allegation was submitted with the petition. That same day, the trial court found "that an emergency exist[ed]" and that Moulton's "welfare ... require[d] immediate action." It issued an order appointing Evans as temporary guardian of Moulton and her estate.

On March 7, 2008, the trial court appointed a guardian ad litem to represent Moulton. On March 20, 2008, the guardian ad litem reported to the trial court on his personal meeting with Moulton and his review of relevant circumstances. The guardian ad litem recommended that Evans be appointed

---

[1] This court referred to Alison Clapp (O'Callaghan) as "O'Callaghan" in a prior appeal, but the trial court in the present action consistently referred to her as "Clapp." Because Appellant now signs her name by enclosing "O'Callaghan" in parenthesis after "Alison E. Clapp", we will follow the trial court's lead.

guardian of her person and that 1st Source Bank ("the Bank") be appointed guardian of her estate.

On April 1, 2008, Evans filed a petition seeking his replacement as temporary guardian over Moulton's estate. That same day, April 1, 2008, the trial court appointed the Bank as temporary guardian of Moulton's estate.

On April 28, 2008, Moulton died. On May 22, 2008, a final report and petition to terminate the guardianship was filed by the Bank and Evans; and they served O'Callaghan therewith. Also on May 22, 2008, the trial court issued its order setting a hearing for June 27, 2008, on the guardians' final report and petition to terminate the guardianship. The trial court's order directed that the guardians' filing "be served on" O'Callaghan. A letter dated June 12, 2008, from the trial court to O'Callaghan advised her that "a hearing via telephone conference" was not possible and "urge[d][her] to attend in person or by counsel."

At the outset of the hearing on June 27, 2008, the trial court noted that "Ms. Moulton's nieces" had been "advised that they needed to be here" if they objected to the petition, and "they're not here." Evidence was heard, and at the conclusion of the hearing, the trial court noted the statutory provision whereby "the guardianship terminates upon the death of the protected person." *See* Ind.Code § 29–3–12–1(b)(2).

On August 11, 2008, the trial court issued an order approving the guardians' final report and terminating the temporary guardianship. The order expressly stated that "notice of the" June 27, 2008, hearing had been "given to ... O'Callaghan," who did not "appear[ ] in person or by counsel."

*In re Temporary Guardianship of Moulton*, No. 64A04–0809–CV–562, slip op. at 1-2 (Ind.

Ct. App. March 17, 2009) (footnote and internal citations to record omitted), *trans. denied,*

*cert. denied*, 130 S.Ct. 1147.

Clapp presented the following issues in her first appeal: (1) "Is Indiana Code [section]

29–3–3–4 [providing for the appointment of a temporary guardian] unconstitutional in any

manner?", *In re Temporary Guardianship of Moulton*, No. 64A04–0809–CV–562, slip op. at

2, and (2) did the trial court err in failing to grant her request to assume trusteeship over

3

Moulton's estate?  This court resolved both questions against Clapp, in each case on grounds that Clapp waived the issue by failing to support her claims with cogent argument, complete with citation to authority.

The additional facts relevant to the present dispute commence with an August 5, 2009 "Guardian's Petition for Attorney and Guardian Fees" filed by Evans. *Appellants' Appendix* at 309.  In this petition, Evans sought "a reasonable fee for the guardian for the person, attorney for the guardianship and attorney for Thora M. Moulton prior to her death", in the amount of the funds then remaining in the Moulton's estate after payment of all creditors, i.e., $16,569.  On September 11, 2011, Clapp submitted a filing entitled "Motion for Summary Judgment, Intervention, and Declaratory Relief." *Id.* at 151.  In it, Clapp requested a change of judge, sought a declaration that I.C. § 29-3-3-4 is unconstitutional, and asked the court to

> grant summary judgment against all of Evans' claims for 'fees' and all/any
> other Evans requests, grant summary judgment in reimbursement to Affiant for
> out-of-pocket expenses, enter an order which closes this case in all respects
> and grants to Affiant and sister Jennifer Moulton Clapp Spiegel all remaining
> assets of Thora Moulton and directs that First Source Bank transfer to Affiant
> and sister all remaining assets.

*Id.* at 155.  According to the corresponding CCS entry, however, "NO MOTION FOR SUMMARY JUDGMENT IS FOUND TO BE ATTACHED, ENCLOSED WAS AFFIDAVIT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, INTERVENTION, AND DECLARATORY RELIEF, AN AFFIRMATION OF SERVICE OF MOTION FOR SUMMARY JUDGMENT, ETC[.] AND A MEMORANDOM OF LAW." *Id.* at 26.  Approximately forty-five days later, Clapp filed a Praecipe for Change of

Judge, detailing her reasons for requesting the change of judge, based generally upon rulings by the court in this case, noting, among other things, that the court had not set a hearing date for her summary judgment motion. The court informed her at that time that it had not set the matter for hearing because she had failed to submit the motion itself.

Evans's August 5, 2009 petition for fees finally came to a hearing on December 6, 2011. Clapp failed to appear at the hearing. Following the hearing, the trial court granted Evans's petition and awarded him the requested funds. In a December 8, 2011 "Order Pertaining to Alison E. Clapp's Motion for Summary Judgment", the trial court set forth the chronology of events from that point forward, as follows:

5. On December 6, 2011, the Clerk received (via certified mail) Ms. Clapp's *Motion for Summary Judgment, Intervention, and Declaratory Relief.*

6. The Clerk, pursuant to Trial Rule 5(F) file stamped her filing September 1, 2011 and the Magistrate of Porter Superior Court #1 received her filing in the mail for consideration on December 7, 2011.

7. Ms. Clapp had notice of the two-day hearing scheduled on December 6 and 7, 2011 commencing at 9:00 a.m. for Attorney Donald Evan's [sic] petition requesting attorney and guardian fees.

8. Ms. Clapp in her *Affidavit in Support of Motion for Summary Judgment, Intervention, and Declaratory Relief* acknowledges the hearings in this Cause held on May 23, 2011 and December 6, 2011; however, Ms. Clapp failed to appear for either.

9. The Court conducted both hearings in her absence.

10. Had Ms. Clapp attended the hearing, she could have informed the Court that she had resent her motion and presented evidence in support of her Motion for Summary Judgment to the Court. Instead, Ms. Clapp relied upon her filings and chose not to appear.

11.     On December 6, 2011, the Court waited until at least 10:30 a.m. to provide more than adequate time for Ms. Clapp to appear. After finding that she had notice of the hearing (as acknowledged in her September 1 filing), the Court heard evidence on Attorney Evan's [sic] petition for fees, found his petition had merit, and granted his petition.

12.     Given the litigiousness Ms. Clapp has demonstrated throughout the history of this Cause, the Court had scheduled two days for the hearing related to Attorney Evan's [sic] motion to allow adequate time for both Attorney Evans and Ms. Clapp to present everything they needed to present for the Court to rule.

13.     The Court denies Ms. Clapp's *Motion for Summary Judgment, Intervention, and Declaratory Relief.* Her improper filing of her original motion resulted in the Court's receipt of the back-dated motion the day after the hearing on Attorney Evan's [sic] petition had been held. Despite that, had Ms. Clapp appeared for the hearing, she could have presented evidence on her motion.

14.     All prior and non-conflicting orders remain in full force and effect.

*Id*. at 37-38. Clapp appeals from the denial of her motion for summary judgment and from the granting of Evans's petition for fees. Further facts will be provided where relevant.

We note at the outset two facts that affect our review. First, Clapp is representing herself upon appeal. There is indication in the record that she has a law degree and, at least at some point in her life, "pursued a legal career." *Appellant's Appendix* at 210.[2] There is no

---

[2] This was provided as a matter of "Family Background and Education", *Appellant's Appendix* at 210, in a document entitled "Statement of Alison E. Clapp (O'Callaghan) Re: Petition of Donald J. Evans, Esq." *Id*. at 209.

indication, however, that she is licensed to practice law in the State of Indiana. Indeed, she does not claim that she is. Whether she is or is not, and regardless of whether she is currently a licensed attorney in any jurisdiction, she will be held to the same standards as trained counsel. *See Daher v. Sevier*, 954 N.E.2d 469 (Ind. Ct. App. 2011).

We note also that Evans did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *In re Paternity of S.C.,* No. 30A01-1107-JP-322, 2012 WL 1066098 (Ind. Ct. App. March 29, 2012). In such cases, we may reverse if the appellant establishes prima facie error, which is error at first sight, on first appearance, or on the face of it. *Id.* Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf. *Id.*

1.

Clapp contends I.C. § 29-3-3-4 is unconstitutional. This argument fails for at least two reasons. First, Clapp presented this very same argument, evidently framed in virtually the same terms, in her first appeal. *See In re Temporary Guardianship of Moulton*, No. 64A04–0809–CV–562, slip op. at 2 ("Is Indiana Code [section] 29–3–3–4 … unconstitutional in any manner?"); *see also Appellant's Brief* at 1 ("Is Indiana Code § 29–3–3–4 unconstitutional in any manner?"). As such, the issue is unavailable to Clapp in this appeal. *See Smith v. State*, 613 N.E.2d 412, 413 (Ind. 1993) ("[the defendant] is precluded from relitigating those issues in that they are either *res judicata* (having been directly decided by the previous appeals) or were waived because they were available to be presented as a part

7

of his previous appeals"), *cert. denied*, 511 U.S. 1063 (1994).

Moreover, even if this issue had not been presented in the previous appeal, Clapp's "argument" on this point amounts to no argument at all. She frames the issue as set forth above in her initial statement of the issues. She then cites the statute in passing three times, including requests for relief in the "Conclusion" portion of her brief, i.e., "upon further consideration and review of matters upon the Appeal, declare Ind. Code § 29-3-3-4 unconstitutional in whole or in part or practice, including that the 60-day statutory limit may not be exceeded", and "direct investigation of all seizures re Ind. Code § 29-3-3-4 *emergency temporary guardianship*[.]" *Appellant's Brief* at 38 (emphasis in original). Clapp fails to explain *why* the foregoing requests should be granted, much less to provide cogent argument explaining how the trial court's ruling ran afoul of the applicable legal standards. Moreover, she fails to cite a single source of authority for the proposition that the trial court's decision was erroneous.

The failure to present a cogent argument or citation to authority constitutes waiver of the issue for appellate review. *See* Ind. Appellate Rule 46(A)(8)(a) (specifying that appellant's arguments must be supported by cogent reasoning and citations to the authorities, statutes, and appendix that were relied on). Thus, even were it not resolved against her on grounds of *res judicata*, this argument would be waived. *See Davis v. State,* 835 N.E.2d 1102 (Ind. Ct. App. 2005), *trans. denied.*

2.

Although it is not mentioned in the sixteen enumerated issues set forth in the "Issues"

section of her appellate brief, what we designate as Issue 2 is denominated by Clapp as "Point III" in the "Argument" section of her brief.[3] She frames this issue as follows: "Trial court erred in failing to consider/docket/grant Appellant's summary judgment, etc., motion[.]" *Appellant's Brief* at 20. She further claims the motion "should have been resolved prior to the scheduling of any hearings", presumably referring to hearings on Evans's petition for fees. *Id*. at 21.

The "motion" in question, filed on September 1, 2011, entitled "Motion for Summary Judgment, Intervention, and Declaratory Relief," read as follows: "Now comes Alison E. Clapp (O'Callaghan) who presents this Motion for Summary Judgment, Intervention and Declaratory Relief, as annexed." *Appellant's Appendix* at 151. "Annexed" to the motion, which we presume meant "attached" to the motion, was a document entitled "Affidavit in Support of Motion for Summary Judgment, Intervention, and Declaratory Relief" (the Affidavit). *Id.* at 152-55. By its own terms, the Affidavit was submitted "in support of the Motion for Summary Judgment, Intervention and Declaratory Relief." *Id*. at 152. Notably absent from these submissions was the motion for summary judgment itself. On October 15, 2011, Clapp filed a Praecipe for Change of Judge. Among other things, the grounds for change of judge included the failure to act upon the September 1 Motion for Summary Judgment, Intervention, and Declaratory Relief. On November 30, the Clerk of Porter

---

[3] Indeed, the incongruity between the manner in which Clapp initially identifies and sets out the issues (i.e., sixteen discrete, enumerated statements of legal issues), and the manner in which she has arranged the elaboration upon and argument of those issues (i.e., seven "points") seems more likely calculated to throw us off the trail than guide us down the path of her legal reasoning. We note, for instance, that it is pretty near impossible to discern any substantive or sequential correlation between one list and the other.

County Superior Court issued a notice stating, in pertinent part, as follows:

> In the Praecipe for Change of Judge the Petition states no ruling was made by the Court on a Motion for Summary Judgment filed on September 1, 2011. Upon research by the Clerk it has been determined that a Chronological Case Summary was filed on September 1, 2011 by the petition but no such Motion for Summary Judgment was found to be annexed as stated.

*Id.* at 199. On December 6, 2011, Clapp purportedly filed a replacement copy of her motion for summary judgment. We say "purportedly" because we cannot find a copy of a replacement motion in the appendices, and, with respect to the replacement motion, the index to Clapp's appendix refers only to "Appellant's Letter to Porter Clerk *Express Mail* enclosing replacement copy of Motion for Summary Judgment, Etc." *Id.* at 3.

A review of the indicated page reveals just that, i.e., a letter referencing an enclosed replacement copy of the summary judgment motion, and nothing more. The CCS reveals that this letter was received along with other materials on December 5 or 6. Of course, as set forth above, December 6, 2011 was also the first of two days set aside for a hearing on Evans's petition for fees. Clapp did not attend that hearing and the court rendered judgment in favor of Evans on the same day. Two days later, the trial court issued a ruling denying Clapp's motion for summary judgment and noting that, pursuant to Ind. Trial Rule 5(F), the December 6 submission was file-stamped September 1, 2011. In the order, the court noted that Clapp had notice of the hearing on Evans's petition for fees, which was scheduled for December 6 and 7, 2011. The court further noted that she failed to attend that hearing, as well as one that was conducted on May 23, 2011, and that the court conducted both hearings

10

in her absence.[4]  After considering the evidence presented by Evans on December 6, and considering only the pleadings Clapp had filed, the court granted Evans's petition.  The court then denied Clapp's Motion for Summary Judgment, Intervention, and Declaratory Relief, stating, "[Clapp's] improper filing of her original motion resulted in the Court's receipt of the back-dated motion the day after the hearing on Attorney Evan's [sic] petition had been held." *Id.* at 37.  The court further observed that, notwithstanding the improper filing, Clapp could have presented evidence on her motion had she appeared for the December 6 hearing.  The point is that there was no summary judgment motion properly before the court when it granted Evans's petition for fees.

In summary, Clapp's motion for summary judgment sought a denial of Evans's petition for fees.  The motion was filed too late to be brought to the court's attention when, on December 6, 2011, the court conducted a hearing on Evans's petition.  Clapp failed to attend the December 6 hearing - a hearing at which she could have apprised the court of the motion she had filed either earlier that day or the day before, and at which she could have presented evidence in support of her position.  Essentially, her failure to appear at the December 6 hearing precipitated the ruling against her with respect to the summary judgment motion.  The court did not err in this regard.

---

[4]   Indeed, we believe the parties could have aided the courts in resolving these issues in a more expeditious manner had they both appeared in the same arena at the same time and presented their own arguments while at the same time refuting those of the opponent.  Clapp neglected to attend the pivotal hearings before the trial court when Evans's petition for fees was the primary topic on the agenda, while Evans chose not to participate in either this appeal or the previous one by filing an appellee's brief.

3.

We now turn to the crux of Clapp's appeal, which is that the trial court erred in granting Evans's petition for attorney fees. By way of reminder, Evans submitted his request for fees, styled a "Guardian's Petition For Attorney and Guardian Fees", on August 5, 2009. *Appellant's Appendix* at 39. The petition runs more than five pages in length, single-spaced, and consists primarily of a narrative description of the many tasks Evans claimed he performed for Moulton during the final years of her life. Evans grouped the tasks he performed on Moulton's behalf into three categories, based upon the role he played when performing them, i.e., "[t]hat a reasonable fee for the guardian of the person, attorney for the guardianship and attorney for Thora M. Moulton should be allowed …[.]" *Id.* at 43.

The order granting Evans's request for fees did not cite the basis upon which the request was granted, but we infer from the petition for fees and the language of the order granting it that the order was based upon Title 29, Article 3 of the Indiana Code (the Guardianship Statute). There is no question that the services Evans delineated in his petition for fees are compensable under the Guardianship Statute. I.C. § 29-3-4-4 (West, Westlaw through legislation effective May 31, 2012) provides:

> If not otherwise compensated for services rendered, any guardian, attorney, physician, or other person whose services are provided in good faith and are beneficial to the protected person or the protected person's property is entitled to reasonable compensation and reimbursement for reasonable expenditures made on behalf of the protected person. These amounts may be paid from the property of the protected person as ordered by the court.

We note that a second provision in the guardianship statute provides similar authority for payment of such claims, i.e.: "A guardian is entitled to reasonable compensation for services

12

as guardian and to reimbursement for reasonable expenditures made in good faith on behalf of the protected person." *See* I.C. § 29-3-9-3 (West, Westlaw through legislation effective May 31, 2012). We review an order of attorney fees under this statute for an abuse of discretion. *See In re Guardianship of Phillips*, 926 N.E.2d 1103 (Ind. Ct. App. 2010) (citing I.C. § 29–3–2–4 (West, Westlaw through legislation effective May 31, 2012)). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*. We conclude that the order granting Evans's petition constituted an abuse of discretion.

First, we note that on May 22, 2008, First Source Bank, which had been appointed as temporary guardian of Moulton's estate, filed its "Guardians' Final Report, Petition to Terminate Guardianship and Request for Guardian Fees" (the Final Report). *Appellants' Appendix* at 59. In this petition, which Evans signed, he was identified as temporary guardian of the person of Moulton. Paragraph 5 of the Final Report stated that First Source Bank "should be allowed final fees with regard to the guardianship and that a reasonable fee for the guardian of the estate would be the sum of $920.00, *and that neither the guardian's attorney nor the guardian of the person is seeking payment for services rendered*." *Id*. at 60 (emphasis supplied). Of course, Evans's August 5, 2009 petition for fees constituted a recantation of this representation.

With respect to guardianships, pursuant to I.C. § 29-3-9-6 (West, Westlaw through legislation effective May 31, 2012), "[w]hen notice of hearing has been given under this section, the order of the court approving the intermediate account or the final account is

13

binding upon all persons."  In the Final Report, "neither the guardian's attorney nor the guardian of the person [sought] payment for services rendered" to the guardianship. *Appellants' Appendix* at 60.  This, of course, referred to Evans.  Yet, the trial court thereafter granted his request for fees from Moulton's Estate for his efforts on behalf of the guardianship.  By explicitly representing that he was not requesting fees for his services upon termination of the guardianship, Evans waived any claim for fees earned prior to that time. *See Shipman v. Shipman*, 192 N.E. 849, 99 Ind. App. 445 (1934)  (judgment approving final account and settlement of guardian was conclusive upon all parties interested, unless appealed from or set aside for illegality, fraud, or mistake).

Evans's request for fees also included fees for personal and legal services rendered for Moulton during her lifetime.[5]  Ind. Code Ann. § 29-1-14-1(a) (West, Westlaw through legislation effective May 31, 2012) provides, in relevant part, as follows:

> Except as provided in IC 29-1-7-7, all claims against a decedent's estate, other than expenses of administration and claims of the United States, the state, or a subdivision of the state, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of the decedent, unless filed with the court in which such estate is being administered within:
>
> > (1) three (3) months after the date of the first published notice to creditors; or
> >
> > (2) three (3) months after the court has revoked probate of a will, in

---

[5]  For purposes of the probate statute imposing time limitations on filing claims against a decedent's estate, "claim" refers to a debt or a demand of a pecuniary nature that could have been enforced against a decedent during the decedent's lifetime.  *Gatlin Plumbing & Heating, Inc. v. Estate of Yeager*, 921 N.E.2d 18 (Ind. Ct. App.  2010), *trans. denied*.

accordance with IC 29-1-7-21, if the claimant was named as a beneficiary in that revoked will;

whichever is later.

According to subsection (d) of this provision, "[a]ll claims barrable under subsection (a) shall be barred *if not filed within nine (9) months after the death of the decedent.*" (Emphasis supplied.)  In his petition for fees, Evans characterized the requested fees in part as "a reasonable fee for the guardian of the person, attorney for the guardianship and attorney for Thora Moulton prior to her death." *Appellants' Appendix* at 43.  The specific services Evans listed in his petition for fees were rendered in these capacities and thus clearly "barrable under subsection (a)" of I.C. § 29-1-14-1.  Evans's petition was filed on August 5, 2009, well in excess of nine months after Moulton's death.  Thus, pursuant to I.C. § 29-1-14-1(d), they were time-barred.

We find no cause in the record to doubt Evans's assertion that he and his office staff "devoted far in excess of one hundred (100) hours attending to the personal and legal affairs of Thora M. Moulton".  *Appellant's Appendix* at 43.  Indeed, the services he provided to Moulton went above and beyond those customarily performed by an attorney for his or her client, especially where the client's ability to pay is so much in doubt.  If this case were governed by equitable considerations, we would be hard-pressed to quibble with the trial court's award of fees.   I.C. § 29-1-14-1(d), however, establishes a requirement for the recovery of fees in cases such as this and Evans failed to satisfy it.  His petition for compensation for the many commendable services he provided to Moulton was simply filed too late.  Therefore, Clapp has made a *prima facie* showing that the trial court abused its

15

discretion in granting Evans's August 5, 2009 request for attorney and guardian fees.

Judgment reversed.

MAY, J., and BARNES, J., concur.